Jordon R. Harlan, Esq. (CA #273978)
**HARLAN HILLIER DIGIACCO LLP**
122 43rd Street
Manhattan Beach, CA 90266
Telephone: (619) 330-5120
Fax: (619) 839-3895
Email: jordon@hhdlaw.com

Adam J. Kress, Esq. (MN #0297289)
*Pro Hac Vice to be filed*
Anna R. Rick, Esq. (MN #0401065)
*Pro Hac Vice to be filed*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: akress@johnsonbecker.com
　　　arick@johnsonbecker.com

***Attorneys for Plaintiff***

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **SOPHERIC ALAN SOTH**, an individual,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>**MASSIMO GROUP,** a Delaware Corporation; and **COSTCO WHOLESALE CORPORATION**, a Washington Corporation inclusive,<br><br>　　　　　　Defendants. | Case No.<br><br>**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1.　　Strict Products Liability<br><br>2.　　Negligent Products Liability |

Plaintiff, **SOPHERIC ALAN SOTH** (hereafter referred to as "Plaintiff"), by and

through his undersigned counsel, **JOHNSON BECKER, PLLC** and **HARLAN HILLIER DIGIACCO LLP**, hereby submits the following Complaint and Demand for Jury Trial against Defendants **MASSIMO GROUP**; and **COSTCO WHOLESALE CORPORATION** (collectively, "Defendants"), and alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1.      This is a product liability action seeking recovery for substantial personal injuries and damages suffered by Plaintiff after he was seriously injured by a "Massimo E-Kooler," Model No. ENX52 ("subject-E-Kooler(s)"). The subject E-Kooler was designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, promoted, distributed, and sold by Defendant, Massimo Group ("Massimo") and marketed, advertised, promoted, distributed, and sold by Defendant, Costco Wholesale Corporation ("Costco").

2.      On or about November 24, 2022, the lithium-ion cells used to power the subject E-Kooler unexpected exploded. As a result, Plaintiff sustained serious and painful injuries, *inter alia*, his left leg, left foot, left ankle and hands.

3.       The subject E-Kooler was and is defective in design and manufacturer because the lithium-ion cells used to power the subject cell can overheat, resulting in thermal burns, chemical burns, and fire hazards (the "Defect"); just as they did in this case. Specifically, these lithium-ion cells:

- Deviated from design specifications, formulas, and/or performance standards;
- Were designed and manufactured without any form of internal temperature control or protection circuitry;
- Failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;
- Were designed, manufactured, and/or fabricated with materials that failed

to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;

- Were designed, manufactured, and/or fabricated using material or materials that caused or contributed to causing excessive thermal and pressure build up;

- Were designed, manufactured, and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

- Were designed, manufactured, and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure; and

- Were designed and sold without undergoing adequate testing, analysis, surveys, or assessments to identify the unreasonable dangers.

4.     The subject E-Kooler was designed in a manner such that it exposed individuals who purchased and used the product, including Plaintiff, to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid.

5.     At all relevant times, Defendants knew or should have known of the Defect but nevertheless marketed, advertised, and sold the subject E-Kooler; failed to adequately warn consumers of the risks associated with the subject E-Kooler; and failed to recall the dangerously defective E-Kooler despite its knowledge of the risk of significant injuries the Defect poses to consumers as well as the Defect's likelihood of causing a catastrophic failure of the product.

6.     As a direct and proximate result of the Defect and the inherent safety risk posed by the Defect, and as a direct and proximate result of Defendants' collective concealment of the Defect, their failure to warn customers, and failure to remove the defective Subject E-Kooler from the stream of commerce, and their failure to recall or

COMPLAINT AND DEMAND FOR JURY TRIAL

remedy the Defect, Plaintiff purchased and used the defective and unsafe E-Kooler, which resulted in serious and significant injuries to the Plaintiff.

7. As a direct and proximate result of Defendants' collective conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, lost wages, physical pain, mental anguish, and diminished enjoyment of life.

### PLAINTIFF SOPHERIC ALAN SOTH

8. Plaintiff is a resident and citizen of the City of Bellflower, County of Los Angeles, State of California. Plaintiff therefore is a resident and citizen of the State of California for purposes of diversity pursuant to 28 U.S.C. § 1332.

9. On or about November 24, 2022, the lithium-ion cells used to power the subject E-Kooler unexpected exploded. As a result, Plaintiff sustained serious and painful injuries, *inter alia*, his left leg, left foot, left ankle and hands.

### DEFENDANT MASSIMO GROUP

10. Massimo designs, manufactures, markets, imports, distributes, and sells a variety of "electric products"[1] products including, *inter alia*, E-Bikes, E-Scooters, and E-Koolers.

11. Massimo is a corporation organized and existing under the laws of the state of Nevada with its headquarters and principal place of business located at 999 Lake Drive, Issaquah, Washington 98027. Masimo does business in 50 states. Massimo is therefore deemed to be a resident and citizen of the States of Texas and Nevada for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

### DEFENDANT COSTCO WHOLESALE CORPORATION

12. Defendant Costco Wholesale Corporation markets, imports, distributes and sells a variety of consumer products, including the subject E-Kooler that is at issue in this case.

13. Costco is a corporation organized and existing under the laws of the state

---

[1] https://massimoelectric.com/

COMPLAINT AND DEMAND FOR JURY TRIAL

of Washington with its headquarters and principal place of business located at 999 Lake Drive, Issaquah, Washington 98027. Costco does business in 47 states.[2] Costco is therefore deemed to be a resident and citizen of the State of Washington for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

14.    At all times relevant, Costco substantially participated in the marketing, distribution, and sale of the subject E-Kooler which caused Plaintiff's injuries and damages.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

16.    *Personal Jurisdiction over Massimo*:    Massimo transacts business in California; derives substantial revenue from goods sold, purchased, distributed and/or used in California; regularly does or solicits business in California; and committed tortious acts and/or omissions that caused injury in California. Massimo derives revenue from the sales of consumer products within California and has purposefully availed itself of the privilege of doing business in California. It marketed, distributed, and sold the subject E-Kooler in California.  Massimo has sufficient "minimum contacts" with California such that subjecting them to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over the Massimo in this Court comports with due process.

17.    *Personal Jurisdiction over Costco*: Costco transacts business in California; derives substantial revenue from goods sold, purchased, distributed and/or used in California; regularly does or solicits business in California; and committed tortious acts and/or omissions that caused injury in California. Costco derives revenue from the sales

---

[2] Costco does not have locations in Rhode Island, West Virginia, or Wyoming.

COMPLAINT AND DEMAND FOR JURY TRIAL

of consumer products within California and has purposefully availed itself of the privilege of doing business in California. It marketed, distributed, and sold the subject E-Kooler in California. Costco is registered to do business in California, and maintains a regional office at 4649 Morena Boulevard, San Diego, California 92117. Costco has sufficient "minimum contacts" with California such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Costco in this Court comports with due process.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

19. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have had sufficient minimum contacts with the State of California and have intentionally availed themselves of the markets within the State of California through the promotion, sale, marketing, and distribution of their products.

**FACTUAL BACKGROUND**

20. Defendants are collectively engaged in the business of designing, manufacturing, warranting, marketing, advertising, importing, distributing and/or selling subject E-Kooler.

21. Massimo boasts that the subject E-Kooler "is suitable for various purposes, such as home use, camping, fishing, road trips, and on vehicles"; "offers ample space for drinks, snacks, and food"; and "[t]he strong and lightweight plastic housing enhances its durability, while the 1x USB port allows you to charge your smartphone."[3]

22. The subject E-Kooler utilizes a "Rechargeable Lithium-Ion Battery Pack" to power the Kooler.[4]

23. It has long been known that Lithium-ion batteries are prone to experience

[3] https://massimoelectric.com/e-koolers/enx52/

[4] *Id.*

6

COMPLAINT AND DEMAND FOR JURY TRIAL

failure, resulting in the phenomenon known as thermal runaway.

24.     Lithium-ion cells are particularly susceptible to the hazard of thermal runaway (also known as venting with flame) and catastrophic failure resulting in an explosion. This is, in large part, because the materials used in the cells are typically thermally unstable and release oxygen at elevated temperatures, which induces a reaction with the electrolyte medium. Oxygen allows other materials to ignite at a lower temperature, and thus burn hotter and faster. Other factors that influence susceptibility of thermal runaway include the history of the cell, e.g. the number of total discharges and charges, and the load applied to the cell. If a user draws too much power from the cell, the cell may become damaged from over discharge, eventually leading to thermal runaway.

25.     Thermal runaway occurs when a lithium-ion cell becomes so hot that it starts to self-generate heat. This happens because the cell can melt around 80 degrees Celsius. Once the separator is compromised, current can run unabated within the cell.

26.     This uncontrolled current leads to further heating. As the cell increases in temperature, the electrolyte solution starts to decompose, leading to a high pressure inside the cell, further increasing the temperature.

27.     Once a critical temperature is reached, the cathode begins to shed oxygen, making the cell combustible due to the reaction between the electrolyte solution and oxygen. Additionally, the higher the charged voltage of the cell, the lower the onset temperature that is needed for induction of thermal runaway, as thermal runaway and heat effects the lithium-ion cells are sensitive to the level of charge.

28.     A well-designed separator is supposed to melt at the point of the internal short circuit, resulting in a shutdown of the cell and prevention of thermal runaway. However, if the separator is poorly designed or constructed, it may not shutdown or prevent thermal runaway. Due to defective design of the separator in the subject cell, thermal runaway was not prevented. An additional safety feature for many lithium-ion cells is "cell regulation".

29.    Regulated cells are a safety feature where the circuitry within the cell prevents over and under voltage, thereby preventing a short circuit of the cell and reducing or eliminating the risk of thermal runaway and explosion.

30.    Finally, another safety feature is a properly functioning vent. If the cell undergoing thermal runaway has a properly functioning vent, the heat and flames are supposed to rapidly discharge from it. If the cell is not adequately vented or the vent is defective, excessive pressure is built up in the cell during thermal runaway resulting in a potential explosion with projectiles being ejected. However, a properly functioning vent will not prevent injuries to those exposed to the chemicals and heat that are released through the vent.

31.    On or about November 24, 2022, the lithium-ion cells used to power the subject E-Kooler unexpected exploded. As a result, Plaintiff sustained serious and painful injuries, *inter alia*, his left leg, left foot, left ankle and hands.

32.     The subject E-Kooler was and is defective in design and manufacturer because the lithium-ion cells used to power the subject cell can overheat, resulting in thermal burns, chemical burns, and fire hazards; just as they did in this case. Specifically, these lithium-ion cells:

- Deviated from design specifications, formulas, and/or performance standards;
- Were designed and manufactured without any form of internal temperature control or protection circuitry;
- Failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;
- Were designed, manufactured, and/or fabricated with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress, and fatigue stress;
- Were designed, manufactured, and/or fabricated using material or

8

COMPLAINT AND DEMAND FOR JURY TRIAL

materials that caused or contributed to causing excessive thermal and pressure build up;

- Were designed, manufactured, and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

- Were designed, manufactured, and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure; and

- Were designed and sold without undergoing adequate testing, analysis, surveys, or assessments to identify the unreasonable dangers.

33. The subject E-Kooler was designed in a manner such that it exposed individuals who purchased and used the product, including Plaintiff, to unreasonable risks of harm during foreseeable uses of the product, including the risks of fire, explosion, and/or burns from heat, fire or battery acid.

34. At all relevant times, Defendants knew or should have known of the Defect but nevertheless marketed, advertised, and sold the subject E-Kooler; failed to adequately warn consumers of the risks associated with the subject E-Kooler; and failed to recall the dangerously defective E-Kooler despite its knowledge of the risk of significant injuries the Defect poses to consumers as well as the Defect's likelihood of causing a catastrophic failure of the product.

35. As a direct and proximate result of the Defect and the inherent safety risk posed by the Defect, and as a direct and proximate result of Defendants' collective concealment of the Defect, their failure to warn customers, and failure to remove the defective Subject E-Kooler from the stream of commerce, and their failure to recall or remedy the Defect, Plaintiff purchased and used the defective and unsafe E-Kooler, which resulted in serious and significant injuries to the Plaintiff.

36. As a direct and proximate result of Defendants' collective conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses,

COMPLAINT AND DEMAND FOR JURY TRIAL

lost wages, physical pain, mental anguish, and diminished enjoyment of life.

## FIRST CAUSE OF ACTION

## <u>STRICT PRODUCTS LIABILITY</u>

PLAINTIFF, FOR A FIRST CAUSE OF ACTION AGAINST MASSIMO GROUP AND COSTCO WHOLESALE CORPORATION ALLEGES AS FOLLOWS:

37.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

38.   At the time of Plaintiff's injuries, Defendants' Subject E-Kooler was defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

39.   Defendants' Subject E-Kooler was in the same or substantially similar condition as when it left the possession of the Defendants.

40.   Plaintiff and his family did not misuse or materially alter the Subject E-Kooler.

41.   The Subject E-Kooler did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way.

42.   Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the Subject E-Kooler safe. Specifically, the subject E-Koolers, inclusive of the lithium-ion cells used to power it:

    a. Deviated from design specifications, formulas, and/or performance standards;

    b. Were designed and manufactured without any form of internal temperature control or protection circuitry;

    c. Failed to incorporate protection circuitry or to integrate other safety devices to protect against overcurrent, overtemperature, short circuit, or overload;

    d. Were designed, manufactured, and/or fabricated with materials that failed to resist and/or magnified the ordinary pressures stress, thermal stress,

10

COMPLAINT AND DEMAND FOR JURY TRIAL

and fatigue stress;

e. Were designed, manufactured, and/or fabricated using material or materials that caused or contributed to causing excessive thermal and pressure build up;

f. Were designed, manufactured, and/or fabricated with inadequate ventilation which caused or contributed to unreasonable heat and pressure build up;

g. Were designed, manufactured, and/or fabricated with a package or container that failed prevent short circuiting leading to rapid discharge, overheating, and catastrophic failure; and

h. Were designed and sold without undergoing adequate testing, analysis, surveys, or assessments to identify the unreasonable dangers.

43. Defendants' collective actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit and all such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION

## <u>NEGLIGENT PRODUCTS LIABILITY</u>

PLAINTIFF, FOR A SECOND CAUSE OF ACTION AGAINST MASSIMO GROUP AND COSTCO WHOLESALE CORPORATION ALLEGES AS FOLLOWS:

44. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

45. Defendants had a duty of reasonable care to design, manufacture, market, and sell non-defective Subject E-Kooler that is reasonably safe for its intended uses by consumers, such as Plaintiff and his family.

46. Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of the Subject E-Kooler in that Defendants knew or should have known

11

COMPLAINT AND DEMAND FOR JURY TRIAL

that said Subject E-Kooler created a high risk of unreasonable harm to the Plaintiff and consumers alike.

47.    Defendants were negligent in the design, manufacture, advertising, warning, marketing and sale of the Subject E-Kooler in that, among other things, they:

a.  Unreasonably failed to implement appropriate processes, procedures, and systems throughout the manufacture of the subject E-Kooler;

b.  Failed to provide adequate warnings about the risk that the subject E-Kooler would fail and spontaneously explode, causing severe bodily harm;

c.  Failed to ensure that consumers, including Plaintiff, received adequate warnings about the risk that the subject E-Kooler would fail and spontaneously explode, causing sever bodily harm;

d.  Failed to provide adequate instructions for the proper handling and use of the Subject E-Kooler;

e.  Placed an unsafe product into the stream of commerce;

f.  Failed to recall the Subject E-Kooler; and

g.  Were otherwise careless or negligent.

48.    Despite the fact that Defendants knew or should have known about the Defect described herein, Defendants continued to market (and continues to do so) the Subject E-Kooler to the general public.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit and all such other relief as the Court deems proper.

## **INJURIES & DAMAGES**

49.    As a direct and proximate result of Defendants' collective negligence and wrongful misconduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future physical and emotional pain and suffering as a result of the incident. Plaintiff is entitled to recover damages from Defendants for these injuries in an amount which shall be proven at trial.

COMPLAINT AND DEMAND FOR JURY TRIAL

50.    As a direct and proximate result of Defendants' collective negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendants in an amount to be proven at trial.

51.    As a direct and proximate cause of Defendants' collective negligence and wrongful misconduct, as set forth herein, Plaintiff has and will continue to incur expenses for medical care and treatment, as well as other expenses, as a result of the injuries he suffered as a result of the incident. Plaintiff is entitled to recover damages from Defendants for his past, present and future medical and other expenses in an amount which shall be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.    That Plaintiff has a trial by jury on all of the claims and issues;

B.    That judgment be entered in favor of the Plaintiff and against Defendants on all of the aforementioned claims and issues;

C.    That Plaintiff recover all damages against Defendants, general damages and special damages, including economic and non-economic, to compensate the Plaintiff for his injuries and suffering sustained because of the use of the Defendants' defective product;

D.    That all costs be taxed against Defendants;

E.    That prejudgment interest be awarded according to proof;

///

///

///

13
COMPLAINT AND DEMAND FOR JURY TRIAL

F.     That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Dated: November 5, 2024                    **HARLAN HILLIER DIGIACCO LLP**

                                           */s/ Jordon R. Harlan, Esq*
                                           Jordon R. Harlan, Esq. (CA #273978)
                                           122 43rd Street
                                           Manhattan Beach, CA 90266
                                           Telephone: (619) 330-5120
                                           Fax: (619) 839-3895
                                           Email: jordon@hhdlaw.com

                                           *In association with*:

                                           **JOHNSON BECKER, PLLC.**

                                           Adam J. Kress, Esq. (MN #0297289)
                                           *Pro Hac Vice to be filed*
                                           Anna R. Rick, Esq. (MN #0401065)
                                           *Pro Hac Vice to be filed*
                                           444 Cedar Street, Suite 1800
                                           St. Paul, MN 55101
                                           Telephone: (612) 436-1800
                                           Fax: (612) 436-1801
                                           Email: akress@johnsonbecker.com
                                           Email: arick@johnsonbecker.com

14

COMPLAINT AND DEMAND FOR JURY TRIAL

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

**Dated: November 5, 2024**          By:     */s/ Jordon R. Harlan, Esq.*
                                              **Jordon R. Harlan, Esq. (CA #273978)**